JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

JUN -4 1979

PATRICIA D. HOWARD
CLERK OF THE PANEL

6/4/79

BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

IN RE OIL SPILL BY THE "AMOCO CADIZ" OFF THE COAST OF FRANCE ON MARCH 16, 1978 ) DOCKET NO. 376

OPINION AND ORDER

BEFORE MURRAY I. GURFEIN, CHAIRMAN, AND EDWIN A. ROBSON, STANLEY A. WEIGEL,* ANDREW A. CAFFREY, ROY W. HARPER, AND CHARLES R. WEINER, JUDGES OF THE PANEL.

PER CURIAM

I. BACKGROUND

This litigation consists of six actions pending in three districts: three actions in the Southern District of New York, two actions in the Eastern District of Virginia, and one action in the Northern District of Illinois.

On March 16, 1978, the tanker Amoco Cadiz, while under tow after having lost both an anchor and its hydraulic steering mechanism, went aground on rocks off the northwest coast of France. In rough water, the disabled ship broke apart on the rocks and disgorged its cargo of approximately 220,000 tons of crude oil, causing extensive environmental and economic loss. All actions in this litigation relate to this sea disaster.

A. The Northern District of Illinois Action

The action in the Northern District of Illinois was brought in admiralty for exoneration from or limitation

* Judge Weigel took no part in the decision of this matter.

FPI—MAR—3-27-79-6M-1781

of liability by Standard Oil Company (Indiana) (herein "Standard"); Amoco Transport Company (herein "Transport"), the Liberian corporation that owned the Amoco Cadiz; Amoco International Oil Company (herein "International"), a Standard subsidiary that is engaged in international oil operations and is the parent of Transport; and Claude Phillips (herein "Phillips"), the director of International's marine operations. Plaintiffs in the Illinois action (herein the "Amoco parties") relied on 46 U.S.C. §183 et seq., provisions limiting a vessel owner or charterer's liability for loss or damage, arising without the privity or knowledge of the owner or charterer, to the value of the interest of the owner or charterer in the vessel and the vessel's freight. In the complaint, the Amoco parties claimed that the Amoco Cadiz was a total loss and that their remaining financial interest in the ship amounted to $795,000 in charter fees owed to Transport by Royal Dutch Shell, Ltd. (herein "Shell") and Shell subsidiaries, companies to which the Amoco Cadiz was under charter at the time of the shipwreck.

The Amoco parties claimed that, pursuant to the International Convention on Civil Liability for Oil Pollution Damage, a multilateral treaty to which France is a signatory, actions for damages from marine oil pollution may be brought only in the courts of countries that either suffered pollution damage or took steps to prevent the damage. Accordingly, the Amoco parties asked the Illinois court to dismiss any claims that may be filed against them by

oil pollution claimants and to direct those claimants to file their claims in the Tribunal of Brest, France, a French court in which Transport has already deposited approximately $16,750,000 for payment of claims.

The Amoco parties in the Illinois action did not admit responsibility for the shipwreck. Rather, they alleged that the shipwreck was due to the perils of the sea and of navigation, or to the fault of others for whom plaintiffs were not responsible, and they sought a judicial determination to that effect.

As further relief, the Amoco parties sought an order 1) directing any persons asserting claims, with respect to which the Amoco parties were seeking exoneration from or limitation of liability, to file those claims with the court in the Northern District of Illinois; and 2) enjoining the prosecution or commencement elsewhere of any proceedings against the Amoco parties arising out of the wreck of the Amoco Cadiz. The Honorable Frank J. McGarr issued an order granting these two requests on September 19, 1978. Subsequently, the Republic of France, a claimant in the Illinois proceedings, filed a motion seeking to vacate and/or modify Judge McGarr's order as it applies to Standard, International and Phillips. France recognized the limitation on liability to which the owner or charterer of a vessel is entitled, but asserted that only Transport was entitled to that statutory protection. On April 17, 1979, Judge McGarr issued an order dismissing

the complaint in the Illinois action as to Standard, International and Phillips; and he directed the plaintiffs to submit a draft order modifying the September 19, 1978 order enjoining suits against the three dismissed parties.

**Also, in November, 1978, the Amoco parties filed a counter**-claim and third-party claim against claimant France for indemnification, contribution and damages resulting from the French authorities' alleged mishandling of the oil cleanup and failure to assist the Amoco Cadiz.

B. The Southern District of New York Actions

The first action in the Southern District of New York was brought by the Republic of France against International and Phillips (herein "the France action"). France seeks 300 million dollars in damages to compensate her for her losses and clean-up costs as a result of the Amoco Cadiz oil spill. France claims that, although the ship was under charter, the ship's captain and crew were in defendants' employ and their control. France claims that the Amoco Cadiz captain, at the defendants' direction, 1) negligently delayed determining the location of salvage tugs and delayed seeking assistance; and 2) after ultimately deciding to secure the towing assistance of the tug Pacific, negligently delayed implementation of the Pacific's assistance and failed to exercise cooperation with the Pacific while bickering over the terms and conditions of the Pacific's services. Defendants are also accused of negligence in 1) failing to issue proper instructions regarding the ship's hydraulic systems; 2) failing to man the Amoco Cadiz with competent

engineers and watch-keeping deck officers; and 3) operating an unseaworthy vessel. Proceedings in this action were stayed pursuant to Judge McGarr's September 19, 1978 order in the Northern District of Illinois.

The second action in the Southern District of New York (herein "the Conseil Genèral New York action") was brought against the Amoco parties; Shell and the Shell subsidiaries to whom the Amoco Cadiz was under charter; Astilleros Espanoles, S.A. (herein "Astilleros"), the Spanish company that built the Amoco Cadiz in Cadiz, Spain; and Bugsier Reedarei und Bergungs A.G. (herein "Bugsier"), the German company that owns the Pacific. Plaintiffs in this action, who seek damages totaling almost 375 million dollars, are Conseil Genèral des Côtes du Nord, the government of the French Department of Côtes du Nord; certain individual towns and municipalities within the Department of Côtes du Nord and the Department of Le Finistère; certain unions, trade associations and hotels; a French environmental society; and a French ornithological society. Generally, the Amoco parties, Shell and the Shell subsidiaries are accused of substantially the same negligent conduct as that charged against International and Phillips in the France action in New York; liability against Astilleros is sought under theories of negligence in the design, testing and construction of the Amoco Cadiz and her steering system, breach of warranties of merchantability, and strict liability; and recovery against Bugsier is sought

on the grounds of failure to exercise proper care, cooperation and due diligence with respect to the salvage attempts rendered by the tug Pacific, and on the further ground of unseaworthiness of the Pacific and its equipment. Proceedings against the Amoco parties were stayed in this action pursuant to Judge McGarr's September 19, 1978 order. In January, 1979, Astilleros filed a motion to dismiss the claims against it on grounds of lack of personal jurisdiction, insufficiency of service of process, and forum non conveniens.

The third New York action (herein "the class action") was brought against Astilleros as a class action seeking damages in excess of one billion dollars. Plaintiffs are owners and operators of hotels, restaurants, fishing boats, oyster beds and ferry boats, and an association charged under French law with the exclusive duty and responsibility to protect and enforce the moral and material rights of families. These plaintiffs sue on behalf of themselves and others similarly situated in the French Departments of Côtes du Nord and Le Finistère. Generally, recovery against Astilleros is sought under the same theories propounded against Astilleros in the Conseil Genèral New York action. In February, 1979, Astilleros filed a motion to dismiss the claims against it on grounds of lack of personal jurisdiction, insufficiency of service of process, and forum non conveniens.

FPI—MAR—3-27-79-6M-1781

C. The Eastern District of Virginia Actions

The complaints in both the Virginia actions are brought against Bugsier and charge, generally, that Bugsier and its employees failed to exercise proper care and seamanship with respect to the Pacific's salvage efforts, and that the Pacific was unseaworthy. Plaintiffs in one action (herein "the Amoco action") are Transport and International. These plaintiffs seek 50 million dollars in damages for the loss of the ship and contribution and/or indemnity from Bugsier for any amounts awarded to claimants against International and Transport in other actions. Plaintiffs in the second Virginia action (herein "the Conseil Genèral Virginia action") are substantially the same as the plaintiffs in the Conseil Genèral New York action. As in the Conseil Genèral New York action, these plaintiffs seek damages of almost 375 million dollars.

Bugsier has filed a motion to dismiss the Conseil Genèral Virginia action on grounds of forum non conveniens, seeking to require the French claimants to return to their home forum in France. Bugsier has also filed a motion to dismiss based on forum non conveniens in the Amoco action in Virginia and, additionally, seeks an order to require the plaintiffs in the Amoco action to arbitrate this dispute in London pursuant to the terms of a salvage agreement entered into between the owners of the Amoco Cadiz and the Pacific.

D. The Illinois State Court Actions

In addition to the federal actions, four class actions have been filed in Illinois state courts by various parties who are also named plaintiffs in the New York class action. Shell is a defendant in three of these actions and the Amoco parties are defendants in all four. Three of the four actions were originally removed to the Northern District of Illinois and assigned to Judge McGarr. In December, 1978, Judge McGarr remanded those three actions to Illinois state courts for want of federal jurisdiction. As in the federal actions, recovery in the four state actions is sought under theories of negligence.

E. Proceedings Before the Panel

The Amoco parties move the Panel pursuant to 28 U.S.C. §1407 to centralize the federal actions in the Northern District of Illinois for coordinated or consolidated pretrial proceedings. Plaintiffs in the New York and Virginia Conseil General actions support centralization under Section 1407, and they leave the choice of the transferee forum to the Panel. France, Astilleros and Bugsier oppose transfer. Plaintiffs in the New York class action oppose inclusion of the Illinois action in centralized pretrial proceedings, but do not oppose centralization of the Virginia and New York actions in the Southern District of New York.

FPI—MAR—3-27-79-6M-1781

II. HOLDING AND REASONING

We find that the six actions in this litigation raise common questions of fact and that transfer under Section 1407 of the New York and Virginia actions to the Northern District of Illinois will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.

France argues that the questions of fact shared by these actions are not sufficiently numerous or complex, and that the accompanying discovery will not be time consuming enough, to warrant transfer. France also asserts that many distinct factual questions exist because of the presence of different legal theories in each action. France suggests that any relevant discovery already conducted in the Northern District of Illinois can be made available to the parties in other actions and that voluntary cooperation among the parties, counsel and courts is a preferred alternative to transfer under Section 1407.

Astilleros, in opposing centralization, argues that discovery in the actions to which it is a party will be distinct from that of the other parties and actions because the discovery from Astilleros will deal with the design and construction of the Amoco Cadiz in Spain, and not with events off the coast of France. Finally France, Astilleros and Bugsier all urge that the pendency of motions to dismiss in the Virginia and New York actions should prompt the Panel

to defer any transfer decision at the present time or to exclude from transfer the claims which are subject to the motions to dismiss.

We find these arguments unpersuasive. France's assertion that these actions do not involve complex common questions of fact and that the accompanying discovery will not be time consuming is belied 1) by France's own listing in the Illinois action of possible witnesses, including the Italian officers and crew of the Amoco Cadiz, Spanish officers and employees of Astilleros, German officers and employees of Bugsier, officers and employees of the Amoco parties, and assorted French officials, businessmen and other entities; and 2) by the fact that the Amoco parties, in response to similar document requests from parties in various actions now before the Panel, have already produced over 60,000 documents to some of the parties and have made available to claimants additional hundreds of thousands of documents for inspection and copying.

The actions in this litigation clearly involve common questions of fact, including questions of fault concerning the steering breakdown; questions of fault with respect to the activities on ship, shore and tug during the hours from the breakdown until the grounding; questions of the causes and amount of damage by pollution; and questions concerning French national and local governments' responsibility in aggravating or failing to mitigate damages. The presence

of differing legal theories in some of the actions does not negate the existence of common questions of fact regarding the shipwreck and the attendant circumstances. See In re Air Crash Disaster in the Ionian Sea on September 8, 1974, 438 F. Supp. 932, 934 (J.P.M.L. 1977). Centralization under Section 1407 is thus necessary in order to prevent duplication of discovery and eliminate the possibility of conflicting pretrial rulings concerning the common factual questions. The transferee judge, of course, has the authority to schedule any pretrial proceedings that are unique to particular parties, claims or actions to proceed concurrently with the common pretrial proceedings, thereby permitting the litigation to proceed expeditiously in all areas. See In re Multi-Piece Rim Products Liability Litigation, 464 F. Supp. 969, 974 (J.P.M.L. 1979). Moreover, the transferee judge has power to provide that no party need participate in pretrial proceedings unrelated to that party's interests. See, e.g., Parts I & II, §§2.31, Manual for Complex Litigation (rev. ed. 1977). While voluntary coordination of discovery efforts among parties and their counsel is always commendable, transfer of these actions to a single district under Section 1407 will ensure the streamlining of discovery and all other pretrial proceedings as well. See In re Gas Meter Antitrust Litigation, 464 F. Supp. 391, 393 (J.P.M.L. 1979).

We see no reason to delay transfer in this litigation because of the pendency of motions to dismiss in certain of the constituent actions. These motions can be presented

to and decided by the transferee judge following transfer. See In re Commonwealth Oil/Tesoro Petroleum Securities Litigation, 458 F. Supp. 225, 230 (J.P.M.L. 1978).

Some parties favor selection of the Southern District of New York as the transferee forum for this litigation because: 1) that district is closer to the location of the shipwreck and is more accessible to the foreign parties in this litigation than any other American forum; 2) records of the American Bureau of Shipping relating to the design, manufacture, maintenance and operation of the Amoco Cadiz, and employees of the Bureau who inspected the Amoco Cadiz, are located in New York City; and 3) the Southern District of New York is relatively close to Washington, D.C., where documents relating to the federal investigation of the Amoco Cadiz disaster are located.

On balance, however, we are persuaded that the Northern District of Illinois is the appropriate transferee forum for this litigation. Many documents and witnesses are located at Standard, International and Transport offices in Chicago in that district. Furthermore, the familiarity which Judge McGarr has developed with this litigation as a result of the pretrial proceedings that have already been conducted in the Northern District of Illinois weighs significantly in favor of that district as the transferee forum. See In re Griseofulvin Antitrust Litigation, 395 F. Supp. 1402, 1403 (J.P.M.L. 1975). Additionally, the related actions that are pending in the Illinois state courts can be coordinated

with the federal proceedings there. The possibility of promoting this state/federal coordination is another factor favoring the selection of the Northern District of Illinois as the transferee forum. See In re Bomb Disaster at Roseville, California, on April 28, 1973, 399 F. Supp. 1400, 1403 (J.P.M.L. 1975). We note also that witnesses can still expect to be deposed near where they reside. See Fed. R. Civ. P. 45(d)(2).

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the actions listed on the following Schedule A and pending in districts other than the Northern District of Illinois be, and the **same hereby** are, transferred to the Northern District of Illinois and, with the consent of that court, assigned to the Honorable Frank J. McGarr for coordinated or consolidated pretrial proceedings with the action listed on Schedule A and pending in that district.

DOCKET NO. 376
Schedule A

| NORTHERN DISTRICT OF ILLINOIS | Civil Action No. |
| --- | --- |
| In the Matter of the Complaint of Amoco Transport Company, Standard Oil Company (Indiana), Amoco International Oil Company and Claude Phillips, for Exoneration from or Limitation of Liability | 78C-3693 |
| **SOUTHERN DISTRICT OF NEW YORK** | |
| Republic of France v. Amoco International Oil Company, et al. | 78 Civ. 4313 |
| Conseil Genèral Des Côtes Du Nord, et al. v. Standard Oil Company (Indiana), et al. | 78 Civ. 4354 |
| Bretagne-Angleterre-Irlande, S.A., et al. v. Astilleros Espanoles, S.A. | 78 Civ. 4945 |
| **EASTERN DISTRICT OF VIRGINIA** | |
| Conseil Genèral Des Côtes Du Nord, et al. v. Bugsier Reederei Und Bergungs, A.G. | 79-51-N |
| Amoco Transport Company, et al. v. Bugsier Reederei Und Bergungs, A.G. | 79-6-N |